UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ANDREA THOLKE,                                    :
                                                  :
                       **Plaintiff,**       :       01-CV-05495 (HB)
                                                  :
       -against-                                :       **OPINION & ORDER**
                                                  :
UNISYS CORPORATION, *et al.*,                     :
                                                  :
                       **Defendant.**       :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:[1]**

       On June 18, 2001, Mrs. Andrea Tholke, Plaintiff, brought an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenging the denial of long-term disability benefits under her employer's benefit plan, and I later granted summary judgment to the Unisys Long Term Disability Plan (the "LTD Plan"), the Unisys Employee Benefits Administrative Committee (the "Committee") and Unisys Corporation ("Unisys") ("Defendants"). Following remand by the Second Circuit, I instructed Tholke and the Defendants to conduct additional discovery to resolve the sole disputed material fact—whether the Committee's July 8, 2002 minutes accurately recorded the medical opinion of Dr. Richard Silver ("Dr. Silver"). After post-remand discovery, Defendants moved to reinstate summary judgment in their favor, while Tholke moved to strike testimony from Dr. Silver and find summary judgment in her favor or, in the alternative, allow for additional discovery. For the following reasons, defendants' motion to reinstate summary judgment is GRANTED, and Plaintiff's motions are DENIED.

### I. BACKGROUND

       The Court assumes familiarity with the background of this case as set forth in *Tholke v. Unisys Corp.*, 2002 WL 575650 (S.D.N.Y. Apr. 16, 2002) ("Tholke I"), and *Tholke v. Unisys Corp.*, 2003 WL 21203349 (S.D.N.Y. May 21, 2003) ("Tholke II"), thus I will present here a brief recitation of the facts and the results of renewed discovery. Andrea Tholke, who suffers from cerebral palsy, worked for many years for the Unisys Corporation as a copy clerk, but claimed that she was unable to continue work after being injured in a car accident on December

---

[1] I would like to thank Mr. Aran McNerney, my Spring intern, for his excellent research of the issues in this case.

5, 1992. *Tholke I*, 2002 WL 575650, at *1. Tholke applied for benefits under the Unisys Long Term Disability Plan (the "LTD Plan"). *Id.*

The extent of Tholke's disability was inconclusive from Tholke's first two doctors. Unisys asked for a third and then a fourth doctor to examine her. *Id*. at *1-*2. Three of the four doctors found that Tholke did not need further treatment, was not disabled, and was able to work. *Id*. at *2.[2] However, uncertainty still existed as to whether Tholke's ability to work meant "light" work or "sedentary" work,[3] and the parties presented conflicting descriptions of what Tholke's job entailed. *Id.* She exhausted her appeals with the administrator of the LTD Plan, Hartford Life and Accident Insurance Company, and then appealed to the Unisys Employee Benefits Administrative Committee (the "Committee"), which denied Tholke benefits on August 3, 1995. *Id.* at *2-3. On June 18, 2001, nearly six years later, Tholke commenced this action.

In the first iteration of this case, I found that that the August 3, 1995 decision was arbitrary and capricious, and I ordered the Committee to give not only full and fair consideration, but to resolve (1) the discrepancy between the diagnoses of the doctors, and (2) the discrepancy between the job descriptions by Tholke and her supervisors. *Tholke I*, 2002 WL 575650, at *4-5. Subsequent to my order, the Committee hired a medical review firm, who retained orthopedic surgeon Dr. Richard Silver, to review the materials and make a recommendation. *Tholke II*, 2002 WL 575650, at *1. Dr. Silver evaluated the medical opinions of the various doctors, the conflicting job descriptions, and the issues the Committee wanted to resolve. *Id.*, at *2. Silver faxed his report to the Committee on July 3, 2002. *Id.*

The Committee convened twice to review Dr. Silver's report, first on July 8, 2002 and again, on July 12, 2002. During the first meeting, the Committee invited Dr. Silver to present his

---

[2] Her doctor, William Wortman, found nothing extraordinary in Tholke's MRI. *Tholke I*, 2002 WL 57560, at *1. Dr. Isaac Cohen, another personal physician determined that Tholke was disabled and unable to work. *Id*. Dr. Armond Prisco determined that Tholke was not disabled and did not need any treatment. *Id*. at 2. Dr. Charles Pitman determined that Tholke could return to work on the condition that the work was "sedentary." *Id.*

[3] The plan administrator, Hartford Life and Accident Insurance Company, defines "sedentary" and "light work" as follows:
> Sedentary Work: Lifting 10 lbs. maximum and occasionally lifting and/or carrying such artifices as dockets, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required only occasionally and other sedentary criteria are met.
> Light Work: Lifting 20 lbs. maximum with frequent lifting and/or carrying of objects weighing up to 10 lbs. Even though the weight lifted may be only a negligible amount, a job is in this category when it involves sitting most of the time with a degree of pushing and pulling of am and/or leg controls, or when it requires walking or standing to a significant degree.

(Bach Affirm. Ex. 4 at 6.)

report by phone, and according to the minutes of the meeting, Dr. Silver opined that "Ms. Tholke was able to perform the job duties prescribed under either job description and that, therefore, she would not have been disabled if her job duties had been as she had explained, or as her supervisor had explained." (Pope Decl. Ex. 7 at 3.) The Committee then determined that any controversy over the job duties was moot and there was no objective medical information to support the claim that Ms. Tholke met the requirements of the LTD Plan for benefits." (Pope Decl. Ex. 7 at 3.)

Three days after the July 8 meeting, Dr. Silver faxed the same report to Unisys but on this occasion with an additional document attached, the "Estimation of Physical Capacities" form dated June 22, 2002. (Bach Affirm. Ex.1 at 29-30.) The form specified what types of actions (standing, lifting, bending) Tholke could do and for how long. The data on the form seemed inconsistent with Dr. Silver's opinion and explanation at the July 8 meeting. The form presented Tholke's physical abilities as being substantially less than Dr. Silver's presentation would suggest.

The Committee decided to reconvene the next day, July 12, 2002, solely to resolve the purported inconsistency. (Pope Decl. Ex. 8 at 1.) According to the Committee's minutes, Dr. Silver explained that the form described physical limitations on Tholke *only* for the period of time immediately following her accident and before recovery, and that "he would place no restrictions on her ability to perform her job duties after the date of maximum medical improvement." (Pope Decl. Ex. 8 at 1.) The form listed the date of maximum improvement to be January 1, 2004—about one year and one month after the accident. (Bach Aff. Ex. 1 at 30).

After the Committee meetings of July 8 and July 12, 2002, Defendants denied coverage to Tholke and moved for summary judgment, which I granted. *Tholke II*, 2003 WL 21203349. Plaintiff successfully appealed the judgment for lack of sufficient notice that I was considering summary judgment. *Tholke v. Unisys Corp.*, 96 Fed. Appx. 76 (2d Cir. 2004) ("Tholke III"). Accordingly, I established a briefing schedule that provided sufficient notice, and I once again found in favor of the defendants on October 18, 2004. *Tholke v. Unisys Corp.*, 2004 WL 2339480 (S.D.N.Y. Oct. 18, 2004) ("Tholke IV"). My decision in part rested upon Dr. Silver's conclusions as stated in the Committee's minutes.[4] Plaintiff appealed arguing that I was

---

[4] A few weeks later, I also denied Plaintiff's motion to collect fees and costs. *Tholke v. Unisys Corp.*, 2005 WL 180938 (S.D.N.Y. Jan. 26, 2005) ("Tholke V").

3

"misled" by the July 8, 2002 Committee minutes, which allegedly misreported Dr. Silver's conclusions. *Tholke v. Unisys Corp.*, 235 Fed. Appx. 834, 838 (2d Cir. 2007) ("Tholke VI"). Plaintiff pointed to possible discrepancies between Dr. Silver's original July 3, 2002 report and his conclusion at the July 8, 2002 meeting as proof. *Id*. at 838-839.

The Second Circuit did not find that any deception had occurred; nevertheless, it held that this Court had erred by relying on the Committee's minutes because there was a genuine dispute of material fact as to whether the July 8, 2002 minutes accurately described Dr. Silver's views. *Id*. More specifically, the court found that Dr. Silver's conclusions in his June 3, 2002 written report were "cautious," while his verbal conclusions to the Committee on July 8, 2004, as recorded in the Committee's minutes, were "less cautious." *Id*. Accordingly, the Second Circuit found a genuine dispute of material fact existed, vacated the grant of summary judgment, and remanded the case back to this Court to resolve "whether the Committee correctly understood, and correctly recorded, Dr. Silver's Comments." *Id*. at 840. The Second Circuit suggested that even an affidavit by Dr. Silver "might have dispelled any ambiguities in these actions and established the accuracy of the meeting minutes as a matter of law." *Tholke VI*, 235 Fed. Appx. at 840.[5]

After the June 7, 2007 remand, I solicited views from the parties on the appropriate scope of post-remand discovery and concluded that, while an affidavit as suggested by the Circuit might be sufficient, it was preferable to depose Dr. Silver and Mary Massman, the recording secretary.[6] (Ct.'s Letter, Sept. 19, 2007.) In addition, several new documents relating to the accuracy of the minutes were produced during the course of depositions. These additional documents included Massman's handwritten notes of the July 8, 2002 minutes (Pope Decl. Ex. 6) and a committee member's email to Massman which noted, among other things, her approval of the draft minutes that Massman had composed (Pope Decl. Ex. 3).

---

[5] The Second Circuit declined to consider the argument for attorney's fees. *Tholke VI*, 235 Fed. Appx. at 840.
[6] Following requests for clarification from the parties, I endorsed a letter on November 7, 2007 defining the scope of Dr. Silver's discovery to three areas: (1) recounting the conversation that Dr. Silver had with the Committee during their meetings on or about July 8, 2002 and July 12, 2002, (2) establishing Dr. Silver's explanation regarding the apparent divergence between his oral communication during these meetings and his letters of July 3, 2002 and July 9, 2002, and (3) determining whether the Committee's minutes accurately memorialized the conversations between Dr. Silver and the Committee. (Pl. Ltr. Nov. 5, 2007 (noting that (1) Massman's deposition was to be narrow, and (2) that Dr. Silver's deposition was to be broader, but confined to the three areas suggested by the defendant and does not include credibility inquiries).)

4

Ms. Massman testified that the minutes were accurate and that she had independent recollections of that meeting. (Massman Dep. 10, 38-39.) She also stated that she reviewed the Committee's July 15, 2002 denial letter, which contains the same conclusions by Dr. Silver as the minutes. (Massman Dep. 31-32, 45.) Massman indicated that, although she took handwritten notes at the meeting, the minutes were not typed up until five months later in early January 2003. (Massman Dep. 12-13.) She also said that she had a number of discussions with the law department about Tholke during the intervening months, and that she took the atypical action of sending her typed draft of the minutes to Unisys Counsel (who authored the July 15, 2002 letter) and making corrections before sending the minutes for approval by the Committee. (Massman Dep. 26-30.)

At Dr. Silver's deposition, he testified that he could not recall anything about his discussion with the Committee five and a half years ago. (Silver Dep. 8.) However, prior to the deposition, Dr. Silver reviewed Tholke's medical file and came to the same determination that has been attributed to him in the July 8, 2002 minutes:

> Q: Have you looked at [the minutes of the July 8th meeting] before this deposition?
> A: Yes, sir. I have.
> A: Now, I'd like you to look at page 3 . . . fourth paragraph . . . . It says, "Dr. Silver offered his opinion that Ms. Tholke." . . . . And it continues with, "Able to perform the job duties under either job description and therefore she would not have been disable if her job duties been as she explained or as her supervisor had explained." All right? [sic]
> A: Okay. I've read that paragraph, sir.
> Q: I'm sure you've read that more than once. This is the question, the $64,000 question. Does that statement accurately reflect your opinion?
> A: Yes, sir. It does.
> Q: And that is based on what?
> A: Review of all of the medical records submitted to me for my review.

(Silver Dep. 24-25.) Dr. Silver affirmed that the July 8, 2002 minutes and the July 12, 2002 minutes accurately states his current medical opinion that Tholke was able to work under either job description. (Silver Dep. 31-32.) In addition, he testified that he saw no inconsistency between his written medical report and his oral medical opinion where the Second Circuit previously found ambiguity. Specifically, Dr. Silver stated:

> Q: And in that paragraph, you say – you're telling us that that is the basis of your opinion that she could do her—she could do the job under either description?

5

> A: Essentially. The last sentence says the following, "There are no objective findings to substantiate her inability to work in my considered medical, orthopedic, surgical opinion."

(Silver Dep. 25-26.)

Following the depositions and the exchange of documents in connection with those depositions, both parties moved for summary judgment. In a subsequent letter date January 7, 2008, Plaintiff objected to the defendant's use of Dr. Silver's testimony and argued that it fell outside the established scope. The Plaintiff asked that the testimony be stricken, or, in the alternative, that this Court allow continued even more expansive discovery.

## II. STANDARD OF REVIEW

Once again the Court is charged with the obligation to determine the proper standard by which to review the motions for summary judgment regarding the Committee's decision to deny Tholke's LTD Benefits and apply that standard to Plaintiff's and Defendants' cross-motions for summary judgment. *See Celardo v. GNY Automobile Dealers Health & Welfare Trust*, 318 F.3d 142, 145-146 (2d Cir. 2003); *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995).

### A. Summary Judgment Standard

A court may grant summary judgment if there are no issues of material fact and the undisputed facts are sufficient to entitle the moving party to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-248 (1986). The moving party has the burden to demonstrate the absence of any genuine issue of material fact, and the opposing party "may not rest upon the mere allegations or denials . . . [but] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-324 (1986). A court must resolve all ambiguities and draw all factual inferences against the moving party and in the light most favorable to the opposing party. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995). When a court considers cross-motions for summary judgment, it "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004) (citations and internal quotes omitted). There must be more than the mere existence of a scintilla of evidence in order for a jury to reasonably find for the opposing party. *Anderson*, 477 U.S. at 252.

**B. Arbitrary and Capricious**

In addition to the summary judgment standard, the Court must examine Unisys' denial of benefits under the appropriate standard of review. Where a benefit plan's administrator or fiduciary has discretionary authority to determine eligibility for benefits, a court will review the denial of benefits under an "arbitrary and capricious" standard, *Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995), and overturn a denial only if the administrator's decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir. 2000) (quoting *Pagan*, 52 F.3d at 442). In order to be substantial, the evidence must be "more than a mere scintilla" such that "'a reasonable mind might accept as adequate to support a conclusion.'" *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

There is no dispute that the Committee had the discretionary authority to decide eligibility for disability under the LTD plan. (Pl.'s Mot. Summ. J. 4; Def.'s Mot. Summ. J. 2-3.) Therefore, the arbitrary and capricious standard is appropriate and the Court will not overturn the Committee's denial unless it is found to be "without reason; unsupported by substantial evidence; or erroneous as a matter of law." *Pagan*, 52 F.3d at 442.

## II. DISCUSSION

The Second Circuit found that a key piece of evidence, the Committee's July 8, 2002 minutes, created a genuine issue of material fact that made summary judgment inappropriate. *Tholke VI*, 235 Fed. Appx. 834 (2d Cir. 2007). The issue was "whether the Committee correctly understood and correctly recorded Dr. Silver's Comments." *Id.* at 840. Accordingly, I believe it is suitable to first determine whether Post-remand discovery has resolved this issue. If questions about the minutes have been resolved, then it is appropriate to reinstate my previous order in favor of the defendants. If the record is insufficient to end the factual dispute, then the Court must reevaluate the merits without the minutes, which could lead to additional discovery or trial.

**A. Plaintiff's Motion to Strike**

As a preliminary matter, Plaintiff submitted a letter several weeks after the filing deadline asking that a statement by Dr. Silver be stricken from the record pursuant to section 32(d)(3)(A) of the Federal Rules of Civil Procedure. (Pl. Ltr. Jan. 7, 2008.) Unfortunately for me, the Plaintiff merely cited the rule, which only indicates that Plaintiff has not waived her objection by failing to bring it at the deposition; she did not specify whether the objection pertains to

7

competency, relevance, or materiality.  *See* Fed. R. Civ. P. 32(d)(3)(A) ("An objection to a deponent's competence--or to the competence, relevance, or materiality of testimony--is not waived by a failure to make the objection before or during the deposition, unless the ground for it might have been corrected at that time.").  Apparently, the plaintiff has allowed me the freedom to guess at what her objection is.

The Plaintiff objects to Dr. Silver's deposition statements that indicate that his current opinion of Tholke's case is the same as the opinion attributed to him in the July 8, 2002 minutes because they were outside the scope of discovery.  (Silver Dep. 6-7, 24-25, 31-31.)  Specifically, the Plaintiff wrote that "[y]our Honor limited the deposition to Dr. Silver's recollection of the meeting and if the minutes accurately reflected his opinion and his examination was limited to that issue."  (Pl. Ltr. Jan. 7, 2008.)  If I allow the statement to stand, then the Plaintiff wants to reexamine Dr. Silver on the basis of that opinion.

To begin with, the scope that I ordered was broader than what the Plaintiff has stated.  The fact that Dr. Silver's current opinion matches his former opinion tends to make it more probable that the former opinion was accurately memorialized by the Committee's minutes (just as the converse would tend to show the opposite), thereby falling within the third area of inquiry.  *See supra* note 7.  That tendency to prove the minutes' accuracy extinguishes objections based on relevancy or materiality.  *See* Fed. R. Evid. 401.  Also, I see no reason to believe the testimony should be stricken for competency since Dr. Silver's current opinion is being offered for what it is—a current analysis that circumstantially supports the minute's accuracy—and no one disputes Dr. Silver's personal knowledge as to his current medical opinion.  *See* Fed. R. Evid. 602; 3 Jack B. Weinstein, *Weinstein's Federal Evidence* § 602.03 (1999).

**B. Scope of the Genuine Issue of Material Fact**

The sole issue on remand is the apparent disparity between Dr. Silver's conclusions, as noted in his June 3, 2002 written report, and his verbal conclusions, as recorded in the Committee's July 8, 2002 minutes.  Although both note that Tholke had no objective evidence to support her claim, the "cautious" written report hedges its bets by generally stating that Tholke had the physical ability to work while failing to distinguish between what kind of work she can do—sedentary or light work.  *Tholke VI*, 235 Fed. Appx. at *5; (Bach Affirm. Ex. 1 at 17-24.)  In contrast, Dr. Silver resolutely concludes in the minutes that "Ms. Tholke was able to perform the job duties under either job description and that, therefore, she would not have been disabled if

her job duties had been as she had explained, or as her supervisor had explained." (Pope Decl. Ex. 7 at 3.) The disparity between these two explanations creates the possibility that the Committee did not properly record and/or understand Dr. Silver's conclusions. Under the standard of summary judgment, the Court was bound to infer that the Committee did not properly record or understand Dr. Silver's conclusion.

Since no affidavit from Dr. Silver had been offered to dispel the discrepancy, as the Second Circuit suggested would suffice, I ordered post-remand discovery to include depositions from Ms. Massman, the Committee Secretary who recorded and memorialized the minutes and Dr. Silver to determine whether the Committee correctly understood and recorded his opinion.

**C. Post-Remand Discovery Supports the Accuracy of the Minutes**

Massman maintains that she has independent recollections of the July 8 meeting, and that the minutes accurately portray what happened (Massman Dep. 10, 38-29.), and Plaintiff does not dispute her veracity (Pl. Mem. 1). Therefore, her deposition directly supports the accuracy of the minutes. *See Helcher v. Dearborn County*, 500 F. Supp. 2d 1100, 1111 (S.D. Ind. 2007) (recognizing an affidavit of board member that "her notes [of the board meeting minutes] truly and accurately reflect what occurred during the meeting" as proof of accuracy where plaintiffs failed to identify any specific falsehoods, inaccuracies, or omissions).

Moreover, Massman's handwritten draft of the minutes conforms in substance to the disputed typed minutes. (*Compare* Pope Decl. Ex. 6 *with* Pope Decl. Ex. 7.) Also, committee member, Nancy Miller, wrote an email noting her approval of Massman's draft, and specifically noted that Dr. Silver said that Tholke needed "4 months MAX to heal." (Pope Decl. Ex. 3.) Beside the corroboration from Miller, this email supports the accuracy of the minutes in another way. In the handwritten minutes, Tholke's recovery time is written variously as "4 months max," "3-6 wks. usually, 4 mos. [on the] outside," and "4-6 mos." (Pope Decl. Ex. 6 at 3, 5.) In contrast, the typed minutes did not state these varied times, but simply state that her injury "could not have been disabling for more than six months." (Pope Decl. Ex. 7 at 3); *see also supra* note 4. Thus, Miller's comment supports the handwritten minutes and lends credence to the position that the notes are a creditable source for the typed minutes.

In sum, many pieces of evidence directly or circumstantially corroborate each other, and giving the Plaintiff every reasonable inference, I cannot say that there is more than a scintilla of evidence, if that, to support any material inaccuracy of the minutes of the July 8, meeting.

*Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). Moreover, the Plaintiff cannot avoid summary judgment "through mere speculation." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). In ERISA cases, as in any other case, summary judgment is appropriate where the nonmoving party rests merely upon improbable inferences, and unsupported speculation. *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir. 1995).

As in my opinion and order of October 18, 2004, I find that the Committee's decision was based on an "extensive and wide-ranging administrative record," ample opportunities from Tholke to supplement this record, and participation from no less than five doctors. *Tholke IV*, 2004 WL 2339480 at 6-8. Buttressed by the arbitrary and capricious standard of review by which I am bound, the Plaintiff has failed to raise a material issue of fact and summary judgment is granted to the Defendants.

### III. CONCLUSION

For all the foregoing reasons, defendant's motion for summary judgment is GRANTED and the complaint is DISMISSED. Plaintiff's motions are DENIED. The Clerk is instructed to close all these and any and all other open motions and remove this case from my docket.

SO ORDERED
New York, New York
March 20, 2008

_____
U.S.D.J.

10